Opinion for the court filed by Circuit Judge HENDERSON.
Dissenting opinion filed by Circuit Judge TATEL.
KAREN LECRAFT HENDERSON, Circuit Judge:
The National Institute of Military Justice (NIMJ) filed this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking, inter alia, nineteen records containing the opinions and recommendations of non-governmental lawyers whose advice the United States Department of Defense (DoD) solicited to promulgate regulations establishing terrorist trial commissions. The district court granted summary judgment in DoD’s favor, concluding that the documents are exempt from disclosure under FOIA Exemption 5, id. § 552(b)(5). See Nat’l Inst. of Military Justice v. U.S. Dep’t of Defense, 404 F.Supp.2d 325, 342-47 (D.D.C.2005). We agree that the documents are protected by FOIA Exemption 5 and therefore affirm the judgment of the district court.
I.
On November 13, 2001 President George W. Bush issued a Military Order to establish military commissions to try terrorists. Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed.Reg. 57,833 (Nov. 13, 2001). The Military Order stated that any person subject to it — i.e., any non-citizen who the President determines there is reason to believe has been a member of al Qaeda, has engaged in acts of international terrorism against the United States or has knowingly harbored such persons — “shall, when tried, be tried by military commission for any and all offenses triable by military commission that such individual is alleged to have committed.” Id. at 57,834. The Military Order further directed that the Secretary of Defense “shall issue such orders and regulations, including orders for the appointment of one or more military commissions, as may be necessary to carry out” the trials. Id.[1]
*679 In the course of promulgating regulations,[2] DoD solicited and received comments from a number of non-governmental lawyers, who were former high ranking governmental officials or academics or both. According to DoD, it
sought the opinions and recommendations of these outside consultants because their previous experience in the government and/or their expertise made them uniquely qualified to provide advice to the General Counsel’s office on the Military Commissions procedures. Each was asked to provide their comments on the proposed Military Commission procedures.
Deck of Christine S. Ricci, DoD Assoc. Dep. Gen. Counsel, (Ricci Deck) 10 (Mar. 9, 2005). Although the consultants were “not paid for their services,” there was “an understanding that they w[ould] consult and advise on a continuing basis.” Deck of Karen L. Hecker, Assoc. Dep. Gen. Counsel, Office of Gen. Counsel, DoD, (Hecker Deck) 2 (July 18, 2005). There was also “an understanding that the contents of the consultations would not be released publicly.” Deck of Paul W. Cobb, Jr., former Dep. Gen. Counsel, Office of Gen. Counsel, DoD, (Cobb Deck) 3 (Feb. 16, 2005).[3]
On October 3, 2003, NIMJ submitted a FOIA request to DoD seeking
all written or electronic communications that the Department (including the Secretary and General Counsel) has either sent to or received from anyone (other than an officer or employee of the United States acting in the course of his or her official duties) regarding the President’s November 13, 2001 Military Order, the Secretary’s Military Commission Orders, and the Military Commission Instructions. This request includes but is not limited to suggestions or comments on potential, proposed, or actual terms of any of those Orders or Instructions and any similar, subsequent, superseding or related Orders or Instructions, whether proposed or adopted.
Compl. ¶ 5 (quoting FOIA Request Letter, Oct. 3, 2003); see Nat’l Inst of Military Justice, 404 F.Supp.2d at 330. In response, DoD released numerous documents but withheld others it considered exempt, including the nineteen documents NIMJ now seeks which DoD withheld as exempt under FOIA Exemption 5.
On February 26, 2004, NIMJ filed this action in the district court seeking the withheld documents. In an opinion and order filed December 16, 2005, the district court granted partial summary judgment in DoD’s favor, concluding, inter alia, that the nineteen documents are exempt from disclosure, as claimed, under FOIA Exemption 5. Nat’l Inst, of Military Justice, 404 F.Supp.2d at 342-47. In an opinion and order filed June 12, 2006, the district court granted final summary judgment in DoD’s favor and this appeal followed.
II.
NIMJ appeals the district court’s grant of summary judgment as to the nineteen documents the court held exempt under FOIA Exemption 5. Exemption 5 provides that FOIA “does not apply to matters that are ... inter-agency or intra-agency memorandums or letters which would not be *680 available by law to a party other than an agency in litigation with the agency.” 5 U.S.C. § 552(b)(5). Relying heavily on the United States Supreme Court’s decision in Department of the Interior v. Klamath Water Users Protective Ass’n, 532 U.S. 1, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001), NIMJ asserts that Exemption 5 does not apply because the documents sought are not “inter-agency” or “intra-agency,” as required by the statutory language.[4] We reject its challenge because our Circuit precedent interprets “intra-agency” to include agency records containing comments solicited from non-governmental parties such as the lawyers whose counsel DoD sought — and, more to the point, our precedent is not inconsistent with Klamath.
In Ryan v. Department of Justice, 617 F.2d 781 (D.C.Cir.1980), we held that documents submitted by United States senators in response to a questionnaire they received from the Department of Justice about procedures for selecting and recommending potential judicial nominees were exempt from FOIA disclosure under Exemption 5. We rejected the FOIA reques-ters’ argument that, because the senators were “not agencies within the meaning of the FOIA,” the withheld questionnaires “c[ould] not be termed ‘inter-agency’ or ‘intra-agency’ ” within the meaning of Exemption 5, reasoning:
When interpreted in light of its purpose, ... the language of Exemption 5 clearly embraces this situation. The exemption was created to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity. In the course of its day-today activities, an agency often needs to rely on the opinions and recommendations of temporary consultants, as well as its own employees. Such consultations are an integral part of its deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions.
Ryan, 617 F.2d at 789-90 (citation footnote omitted). Noting that “efficient government operation requires open discussions among all government policy-makers and advisors, whether those giving advice are officially part of the agency or are solicited to give advice only for specific projects,” we concluded: “When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an ‘intra-agency’ memorandum for purposes of determining the applicability of Exemption 5.” Id. at 790. Integral to the court’s analysis was the fact that the documents sought “were generated by an initiative from the Department of Justice, i.e., the questionnaire sent out by the Department to the Senators.” Id.[5]
*681 In Formaldehyde Institute v. Department of Health & Human Services, 889 F.2d 1118 (D.C.Cir.1989), we clarified that Exemption 5 extends to documents received from private, nongovernmental parties. In particular, we concluded the exemption protected documents containing comments of two private referees for the American Journal of Epidemiology on a report submitted for publication by a staff member of the Centers for Disease Control (CDC). Relying largely on Ryan, we found immaterial “the absence of any formal relationship” between the reviewers and the Department of Health and Human Services (HHS), 889 F.2d at 1123, explaining that “ ‘[w]hether the author is a regular agency employee or a temporary consultant is irrelevant; the pertinent element is the role, if any, that the document plays in the process of agency deliberations,’ ” id. at 1122 (quoting CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1161-62 (D.C.Cir.1987), cert. denied, 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988)).
More recently, in Public Citizen, Inc. v. Department of Justice, 111 F.3d 168 (D.C.Cir.1997), we held exempt from disclosure records containing communications among former President Reagan, the National Archives and the Department of Justice and among former President Bush and the same agencies regarding electronic records of each of the two Presidents’ administrations. Acknowledging that “Public Citizen is doubtless right that a former President is not an agency under FOIA,” we affirmed that “records of communications between an agency and outside consultants qualify as ‘intra-agency’ for purposes of Exemption 5 if they have been ‘created for the purpose of aiding the agency’s deliberative process.’ ” Pub. Citizen, 111 F.3d at 170 (quoting Dow Jones & Co. v. Dep’t of Justice, 917 F.2d 571, 575 (D.C.Cir.1990) (emphasis by Dow Jones court)) (citing CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1161 (D.C.Cir.1987)).
Taken together, the foregoing cases compel us to conclude that documents such as the ones here — submitted by non-agency parties in response to an agency’s request for advice — are covered by Exemption 5. NIMJ attempts to distinguish those cases factually but to no avail. NIMJ first asserts, for example, that neither Ryan nor Public Citizen involved “ ‘ordinary private citizen[s],’ ” Opening Br. at 14 (quoting Pub. Citizen, 111 F.3d at 170)-but this argument overlooks the fact that Formaldehyde Institute did involve private citizens (two outside referees). NIMJ also contends that the “consultative relationship” here is not, as it was in Public Citizen, “mandated by statute,” id — but neither was it in either Ryan or Formaldehyde Institute.[6] See Ryan, 617 F.2d at 784 (questionnaires sent to senators in response to Executive Order No. 12097 directing U.S. Attorney General to assist in promulgating “standards and guidelines for the selection of nominees for United States district court judgeships,” 43 Fed. *682 Reg. 52,455, 52,455 (Nov. 8, 1978)); Formaldehyde Inst., 889 F.2d at 1119 (reviewers commented in response to CDC employee’s submission of article to private journal).
NIMJ next asserts that the cited Circuit precedents, even if otherwise controlling, have been “superseded” by the Supreme Court’s decision in Klamath. Again we disagree.
In Klamath, the Court concluded that Exemption 5 does not protect documents submitted by Indian Tribes to the Department of the Interior, which documents addressed tribal interests that were then the subject of state and federal water allocation proceedings. In rejecting the Government’s exemption claim, the Court focused on the language in Exemption 5 requiring that exempt documents be either “inter-agency or intra-agency,” 532 U.S. at 9, 121 S.Ct. 1060, and emphasized that there is “no textual justification for draining the first condition of independent vitality,” id. at 12, 121 S.Ct. 1060. Noting that the statute was silent “about communications with outsiders,” the Court observed that “some Courts of Appeals have held that in some circumstances a document prepared outside the Government may nevertheless qualify as an ‘intra-agency’ memorandum under Exemption 5” under the so-called “consultant corollary” to Exemption 5. Id. at 9, 121 S.Ct. 1060. “Typically,” the Court added, “courts taking [this] view have held that the exemption extends to communications between Government agencies and outside consultants hired by them.” Id. “In such cases,” the Court noted, “the records submitted by outside consultants played essentially the same part in an agency’s process of deliberation as documents prepared by agency personnel might have done,” notwithstanding the consultants “were independent contractors and were not assumed to be subject to the degree of control that agency employment could have entailed” and they were not necessarily “devoid of a definite point of view.” Id. The Court concluded, however, that the Indian Tribes in Klamath were not analogous to government consultants.
The Court explained that “the fact about the consultant that is constant in the typical cases is that the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it.” Id. at 10-11,121 S.Ct. 1060. “Its only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do.” Id. at 11, 121 S.Ct. 1060. By contrast the Indian Tribes “necessarily communicate with the Bureau with their own, albeit entirely legitimate, interests in mind.” Id. at 12, 121 S.Ct. 1060. Although concluding that “this fact alone distinguishes tribal communications from the consultants’ examples recognized by several Courts of Appeals,” the Court further found that “the distinction is even sharper, in that the [Indian] Tribes are self-advocates at the expense of others seeking benefits inadequate to satisfy everyone.” Id. Finding the circuit cases on outside consultants thus distinguishable, the Court expressly declined to decide whether such consultants’ reports “may qualify as intra-agency under Exemption 5.” Id. at 12,121 S.Ct. 1060.
Given the Supreme Court’s disclaimer and its reasoning, we perceive no basis to jettison our binding Circuit precedent. See United States v. Carson, 455 F.3d 336, 384 n. 43 (D.C.Cir.2006) (“[W]e are, of course, bound to follow circuit precedent absent contrary authority from an en banc court or the Supreme Court.” (citing Brewster v. Comm’r, 607 F.2d 1369, 1373 (D.C.Cir.1979))).[7] It remains true that *683 “ ‘federal agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unravell-ing their knotty complexities.’ ” Formaldehyde Inst., 889 F.2d at 1122 (quoting CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1162 (D.C.Cir.1987)). It was plainly preferable in this case for DoD to consult as widely as possible in order to fairly but effectively try terrorists in the aftermath of September 11, 2001. Unlike the Indian tribes in Klamath, the individuals DoD consulted had no individual interests to promote in their submissions, as NIMJ itself concedes. See Reply Br. at 4 n. 1 (“The government is correct that NIMJ has made no suggestion of personal interest in these proceedings, nor does it intend to impugn the integrity of the distinguished individuals at issue.”); cf. Cobb. Deck 4 (stating that in addition to the “few written comments ... received from individual lawyers who had been asked by the General Counsel to provide confidential legal views” — comments which NIMJ now seeks — “[m]any more comments came from members of the public or organizations with an interest in these matters, like Human Rights Watch or the American Bar Association” — “[s]ome of these comments were solicited); (many were not”— comments for which DoD did not claim the Exemption) (emphasis added). For this reason, the case before us is readily distinguishable from Klamath, in which “the dispositive point [was] that the apparent object of the Tribe’s communications is a decision by an agency of the Government to support a claim by the Tribe that is necessarily adverse to the interests of competitors.” Klamath, 532 U.S. at 14, 121 S.Ct. 1060. Further, although the individuals DoD consulted are, as NIMJ notes, private citizens rather than government employees or paid contract consultants, we see no reason why the absence of a contract or compensation should differentiate them from the “typical” outside agency consultants. These were not random citizens volunteering their opinions. DOD sought these individuals out and solicited their counsel based on their undisputed experience and qualifications. See (Ricci Decl. 10-11).[8] Their contributions *684 to DoD’s deliberation in promulgating regulations were no less valuable or confidential for the lack of compensation or formal contract.
Our established line of consultant cases is all the more compelling given that we have acknowledged the survival of our “consultant corollary” in the wake of Kla-math. In Judicial Watch, Inc. v. Department of Energy, 412 F.3d 125 (D.C.Cir.2005), two public interest organizations sought disclosure of documents held by eight federal agencies.[9] The documents had been prepared by the National Energy Policy Development Group (NEPDG), which was ■ established by the President and composed of high ranking federal officials and employees detailed from federal agencies. We concluded that the withheld documents were protected under Exemption 5 notwithstanding NEPDG did not qualify as an “agency” under FOIA (“because its sole function [was] to advise and assist the President,” 412 F.3d at 129) and it did not prepare the documents for an agency. We there acknowledged Kla-math’s admonition that, to be protected by Exemption 5, a document must not only be pre-decisional and deliberative but “by the terms of Exemption 5, it must also be an ‘inter-agency’ or an ‘intra-agency’ record,” 412 F.3d at 129 (citing Klamath, 532 U.S. at 9, 121 S.Ct. 1060). We nonetheless found that “[o]ur interpretation of Exemption 5” — that documents held by agencies but prepared by the non-agency NEPDG come within Exemption 5’s protection — “is not inconsistent with its textual limitation to ‘intra-agency’ or ‘inter-agency’ communications”; “[rjather it follows from the principle, well established in this Circuit, that a document need not be created by an agency or remain in the possession of the agency in order to qualify as ‘intra-agen-cy.’ ” Id. at 130. To exemplify this principle, the court quoted Ryan’s dispositive determination: “When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an ‘intra-agency’ memorandum for purposes of determining the applicability of Exemption 5.” Ryan, 617 F.2d at 790, quoted in Judicial Watch, 412 F.3d at 130 (concluding that “[n]ot to treat in the same way documents shared with or received from the NEPDG, a body established by the President solely to advise him, and composed entirely of federal officials, would be anomalous indeed.” (internal citation omitted)). We base our decision here on the same “well established” principle.
Notwithstanding this court has itself affirmed post-Klamath the continuing validity of the Ryan line of cases, NIMJ offers two particular arguments to support its view that Klamath supersedes Circuit precedent. We find neither one persuasive.
First, NIMJ contends that the Klamath Court’s admonition to give “independent vitality” to the statutory terms “inter-agency” and “intra-agency” forecloses exempting documents an agency receives from private citizens as such records are neither inter-nor intra-agency. Contrary to NIMJ’s contention, our continued adherence to the consultant corollary does not diminish the “independent vitality” of the statutory terms, as we made clear in Judicial Watch. In Ryan we explained that “[i]n the course of its day-to-day activities, an agency often needs to rely on the opinions and recommendations of temporary consultants, as well as its own em *685 ployees,” 617 F.2d at 789, and it is “entirely reasonable” to adopt a “common sense interpretation of ‘intra-agency’ ” that encompasses the advice submitted by such temporary consultants. In this case, DoD itself solicited the advice contained in the documents from the individual nongovernmental lawyers for the agency’s own use in promulgating terrorist trial commission regulations. Under such circumstances, it is consistent with Ryan’s “common sense” interpretation to deem the documents “in-tra-agency” so as to come within Exemption 5’s protection. And it is likewise consistent with Klamath’s directive to hew to the language of the statute. Indeed, Kla-math itself acknowledges that disinterested outside consultants “may be enough like the agency’s own personnel to justify calling their communications intra-agency.” 532 U.S. at 12,121 S.Ct. 1060.[10]
Second, NIMJ contends that Klamath expressly calls into question the holdings in Ryan and Public Citizen. It is true that the Court in Klamath stated that the two decisions “arguably extend beyond what we have characterized as the typical examples” of agency consultants but, consistent with its reasoning in the case before it, the Court expressed concern only with regard to the potential self-interests of the “consultants” involved in those cases. See Klamath, 532 U.S. at 12 n. 4, 121 S.Ct. 1060 (noting the former presidents in Public Citizen “had their own, independent interests” and in Ryan, the senators’ questionnaire responses were held exempt “even though we would expect a Senator to have strong personal views on the matter”). As we have already noted, however, there is no dispute that the individuals DoD consulted were not pursuing interests of their own so as to run afoul of Klamath’s concern. Thus, the extent to which either Ryan or Public Citizen may have extended Exemption 5 beyond its permissible scope based on their peculiar facts is an issue we need not and do not decide here.
In applying the Ryan line of cases, we emphasize two factors in their analyses that support our continued application of the consultant corollary. First, as our cases make clear, the expectation that communications will remain confidential is crucial to eliciting candid and honest advice from outside consultants. See Ryan, 617 F.2d at 789-90 (“[Consultations [with temporary consultants] are an integral part of [an agency’s] deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions.”); Formaldehyde Inst., 889 F.2d at 1122 (“A predecisional document is a part of the ‘deliberative process,’ if ‘the disclosure of [the] materials would expose an agency’s decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency’s ability to perform its functions.’ ”) (quoting Dudman Commc’ns Corp. v. Dep’t of Air Force, 815 F.2d 1565, 1568 (D.C.Cir.1987)) (emphasis and alteration in Formaldehyde Inst.)-, Pub. Citizen, 111 F.3d at 170 (“[F]or a President to be able to give adequate assurances of confidentiality to his advisors, the assurances *686 must last beyond his tenure.”); Judicial Watch, 412 F.3d at 129 (Exemption 5’s “inclusion in the statute ‘reflect[s] the legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to ‘operate in a fishbowl’ because the full and frank exchange of ideas on legal or policy matters would be impossible.’ ”) (quoting Tax Analysts v. IRS, 117 F.3d 607, 617 (D.C.Cir.1997)) (alteration in Judicial Watch); see also NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (“ ‘(h)uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances ... to the detriment of the decisionmaking process’ ”) (quoting United States v. Nixon, 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)) (alteration in Sears); see also Hecker Decl. 3 (“The public disclosure of these materials would discourage the frank, open discussions on these issues by these individuals.”).
Second, throughout the Ryan line of cases, there have been some indicia of a consultant relationship between the outsider and the agency. Typically the relationship is evidenced by the fact that the agency seeks out the individual consultants and affirmatively solicits their advice in aid of agency business, as DoD did here. See Ryan, 617 F.2d at 790 (“When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an ‘intra-agency’ memorandum for purposes of determining the applicability of Exemption 5.” (emphasis added)); id. (“We cannot overlook the fact that the documents here were generated by an initiative from the Department of Justice, i.e., the questionnaire sent out by the Department to the Senators.”); Formaldehyde Inst., 889 F.2d at 1122 (“[I]t is unquestionably true that efficient government operation requires open discussions among all government policymakers and advisors, whether those giving advice are officially part of the agency or are solicited to give advice only for specific projects.” (emphasis added; internal quotation omitted)).[11] The dissent is therefore wrong to suggest, see Dissent at 692-93 that our cases allow an agency merely to ask the general public for advice at a press conference or in the Federal Register and then to classify the resulting responses as “intra-agency” documents; nothing in our cases (including today’s decision) even remotely supports the view that such circumstances would establish a consultant relationship between the agency and each individual. In addition, we do not see how the advice here would be any more “intra-agency,” as the dissent suggests, were the individuals consulted clas *687 sified as “committee” members or paid nominal stipends. See Dissent at 689, 692, 694-95. It was DoD’s formal solicitation of their advice (with or without nominal pay or title) that created a consultant relationship and made them analogous to agency employees and documents containing their advice “intra-agency.” We need not decide how Exemption 5 might apply to any agency solicitation for advice; this case involves the solicitation of advice from a discrete group of experts, not from “thousands of citizens.” See Dissent at 692.
The dissent alleges that our reliance, in this case, on formal agency solicitation of advice from a discrete group of experts (consistent with Circuit precedent) presents a “fundamental problem” because these “principles ... have no basis in Exemption 5’s text.” Dissent at 692. But the dissent itself offers no anchoring in the text for a bright-line rule requiring that an agency provide consultants with nominal payment or membership on a nominal committee if it wishes to consider documents containing their advice “intra-agen-cy.” Nor does it explain how the text of Exemption 5 limits the volunteer consultants who can produce intra-agency documents to those on committees created under the Federal Advisory Committee Act (FACA), 5 U.S.CApp. 2 §§ 1-16 (nor, indeed, on the dissent’s reading of Klamath, how it authorizes treatment of FACA-com-pliant consultants as “intra-agency”). Indeed, while the dissent is troubled by a belief that our analysis would permit advice to be solicited by e-mail from “every law professor in the country,” Dissent at 11, and come within Exemption 5 (a scenario we expressly do not reach, see supra p. 19), the dissent’s own analysis would seem to require us to extend Exemption 5 to such a case so long as the agency’s email invited “every law professor” to join an “Ad Hoc Committee for Advice on Legal Compliance” and indicated that a professor who provided responsive comments would thereby consent to membership on the Committee. There is nothing in the text of Exemption 5 that would require such; what matters is the nature of the relationship between the consultant and the agency, not the formalities observed.
For the foregoing reasons, we conclude that the nineteen documents NIMJ seeks are exempt from disclosure under FOIA Exemption 5. 5 U.S.C. § 552(b)(5). Accordingly, the judgment of the district court is affirmed.

So ordered.

. The Military Order further provided that the orders and regulations:
shall include, but not be limited to, rules for die conduct of the proceedings of military commissions, including pretrial, trial, and post-trial procedures, modes of proof, issuance of process, and qualifications of attorneys, which shall at a minimum provide for'—
(1) military commissions to sit at any time and any place ...;
(2) a full and fair trial, with the military commission sitting as the triers of both fact and law;
(3) admission of such evidence as would ... have probative value to a reasonable person;
(4) in a manner consistent with the protection of information classified or classifiable under Executive Order 12958 of April 17, 1995, as amended, or any successor Executive Order, protected by statute or rule from unauthorized disclosure, or otherwise protected by law, (A) the handling of, admission into evidence of, and access to materials and information, and (B) the conduct, closure of, and access to proceedings;
(5) conduct of the prosecution by one or more attorneys designated by the Secretary of Defense and conduct of the defense by attorneys for the individual subject to this order;
(6) conviction only upon the concurrence of two-thirds of the members of the commission present at the time of the vote, a majority being present;
(7) sentencing only upon the concurrence of two-thirds of the members of the commission present at the time of the vote, a majority being present; and
(8) submission of the record of the trial, including any conviction or sentence, for review and final decision by [the President] or by the Secretary of Defense if so designated by [the President] for that purpose.
*679 66 Fed.Reg. at 57,834-85.

. The regulations issued in final form on July 1, 2003. See 68 Fed.Reg. 39,397 (July 1, 2003).

. The views of individuals who were "not consulted with on a continuing basis or with the understanding and expectation that their comments would be kept in confidence” were not withheld as exempt. Hecker Deck 3-4.

. There is no dispute that the withheld documents satisfy the second requirement in Exemption 5 — that they be "unavailable by law" under one of the established civil discovery privileges — here, under the "deliberative process” privilege. See Dep’t of Interior v. Klamath Water Users Protective Ass’n, 532 U.S. 1, 8-9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). To qualify for Exemption 5 protection under the deliberative process privilege, "an agency's materials must be both 'predecisional' and a part of the 'deliberative process.’ ” Formaldehyde Inst. v. Dep’t of Health & Human Servs., 889 F.2d 1118, 1121 (D.C.Cir.1989) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151-52, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). The withheld documents are plainly both.

. The court observed that "[t]he questionnaire plus replies must correspond in origin and process to literally millions of documents and memoranda of various kinds on a myriad of subjects which repose in the files of the executive departments and independent agencies, *681 i.e., memoranda which were created by someone outside the executive branch but in response to an initiative from the executive branch,” noting that “[flor example, the Department of Agriculture must have bales of information in response to questionnaires.” Ryan, 617 F.2d at 790 & n. 29.

. NIMJ asserts, somewhat inaccurately, that "this Court in Formaldehyde. Institute focused on the statutory mandate underlying the consultative process at issue.” Opening Br. at 16-17. In that case, however, it was the decision, not the consultation, that was statutorily mandated. See Formaldehyde Inst., 889 F.2d at 1124 ("Thus, Congress has directed HHS to make precisely the kind of 'deliberative' decision HHS made as a result of a process that involved HHS' receipt of the Review Letter.” (emphasis in original)). In this case, an equally "deliberative” decision was mandated by the Military Order.

. The dissent contends we should leapfrog our precedent and construe afresh the statuto *683 ry language, Dissent at 2 — but we do not write on a clean slate. As we have recounted, in previous opinions this Circuit has repeatedly interpreted Exemption 5 to extend to documents generated by non-agency individuals under our consultant corollary. To the extent they are not "effectively overrule[d]” by Kla-math — and we do not believe that they are as we apply them — we are bound by their holdings. See United States v. Williams, 194 F.3d 100, 105 (D.C.Cir.1999) (stating whether Supreme Court opinion supersedes Circuit precedent interpreting statute depends on whether opinion "effectively overrules”, i.e., "eviscerate[s]” precedent and concluding: "That the Supreme Court had doubts about the constitutionality of [a] statute, doubts that it never had to resolve, is simply too thin a reed to permit a panel of this court to find similar doubts in a different statute and, based on those doubts, to depart from circuit precedent expressly interpreting the statute ....”) (internal quotation omitted).

. They were an undisputedly distinguished group of individuals: a former DoD General Counsel, a former Secretary of the United States Department of Transportation, a former Legal Counsel to the President, a former Director of the Central Intelligence Agency and the Federal Bureau of Investigation, a former Secretary of the Army, a former Assistant Trial Counsel at the Nuremberg International War Trials, a former Special Counsel to the DoD General Counsel, a former Federal Communications Commission Chairman, a former Deputy Chief of the Fraud Section in the Department of Justice Criminal Division, a former DoD Deputy General Counsel, a former professor at the United States Naval War College and a member of the Secretary of State’s Advisory Committee for International Law and the DoD Defense Policy Board, and a law professor and former Director of the American Law Institute. Second Vaughn Index of Docs. Withheld, filed in NIMJ v. DoD, No. 04-312 (D.D.C. Mar. 9, 2005).

. The agencies were: the United States Departments of Agriculture, Commerce, Energy, the Interior, Transportation and the Treasury, the Environmental Protection Agency and the Federal Emergency Management Agency. Judicial Watch, 412F.3datl27.

. The dissent seems to suggest that the people consulted must themselves be "within” the agency, see Dissent at 692, but the statute requires only that the withheld documents ("memorandums or letters”) be "intra-agen-cy.” Consultants are in some sense necessarily "outside” rather than "inside” the agency but the documents they produce may nonetheless qualify as "intra-agency” documents. See Klamath, 532 U.S. at 10, 121 S.Ct. 1060 (noting that in circuit consultant corollary decisions "the records submitted by outside consultants played essentially the same part in an agency’s process of deliberation as documents prepared by agency personnel might have done”) (emphasis added).

. In Formaldehyde Institute, the court rejected the FOIA requester’s contention that Exemption 5 did not apply because “the outside reviews were not ‘solicited’ by HHS,” explaining:
[I]t is an undisputed fact that “receipt of comments [from outside reviewers] is an expected result in the submission of an article for publication." Furthermore, it is undisputed that reviewers’ comments are "expected to be confidential.” The agency does not "solicit” reviews in the sense that it contracts to receive them, but it does actively seek to do business with journals from which reviews are both expected and then used by CDC to determine whether and in what form to publish articles in the name of the agency. This arrangement reflects a mutual understanding between the agency and journals that provide confidential reviews regarding how the agency will use the reviews. The existence of such an arrangement is more than enough to hold that the Review Letter is a part of the deliberative process of the agency.
889 F.2d at 1124 (record citations omitted) (alterations added).