# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Nolan Finnerty,<br>               Petitioner<br><br><br><br>          v.<br><br>Pennsylvania Department of<br>Community and Economic<br>Development,<br>               Respondent | :<br>:<br>:<br>:<br>:<br>:<br>:  No. 801 C.D. 2018<br>:  Argued: March 14, 2019<br>:<br>:<br>:<br>:<br>: |

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: April 25, 2019**

Nolan Finnerty (Requester) petitions for review of a Final Determination of the Office of Open Records (OOR) issued May 14, 2018, denying in part his appeal of the Pennsylvania Department of Community and Economic Development's (Department) partial denial of his request for records under the Right-to-Know Law (RTKL).[1] Requester argues that OOR erred when it determined that the Department properly invoked the internal, predecisional deliberation exception as to certain records because those records were not internal to the Department but were shared with subcontractors of the Department. We disagree and conclude that these records remained "internal to the agency" because

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

the records were exchanged between the Department and outside contractors with whom the Department had a contractual relationship to assist it in bringing the City of Chester (the City) out of financially distressed status. *McGowan v. Pa. Dep't of Envtl. Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014).

Requester also challenges the Department's withholding of certain records under the privilege of attorney-client communications and, relatedly, the attorney work-product doctrine. However, at oral argument, the Department's Counsel represented, and Requester's Counsel agreed, that the records withheld as privileged attorney-client communications and under the attorney work-product doctrine had been disclosed to Requester. Therefore, we conclude that, as a result of that disclosure, Requester's challenges based on the attorney-client communications privilege and attorney work-product doctrine have been rendered moot, and none of the exceptions to the mootness doctrine apply.

## I.     Factual Background

Since 1996, pursuant to the Municipalities Financial Recovery Act[2] (Act 47), the City has been determined to be a financially distressed municipality. Under Section 221 of Act 47, 53 P.S. § 11701.221, the Department is authorized to appoint and compensate a consultant who will act as a coordinator in preparing and addressing the municipality's financial problems. In February 2016, following a request for proposals (RFP), the Department entered into a contract (Contract) with EConsult Solutions Inc. (EConsult) to act as the Act 47 Coordinator for the City. (Reproduced Record (R.R.) at 111a-41a.) At the time of the Contract, EConsult had been serving as the Act 47 Coordinator for the City since September 2015

---

[2] Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101-11701.712.

under a contract with the Department.  (*Id.* at 338a.)  Under the terms of the RFP, which were incorporated into the Contract, EConsult was responsible for implementing the Recovery Plan for the City, working closely with municipal officials, maintaining close contact with the Department and providing the Department with progress reports regarding the Recovery Plan implementation, consulting with employee collective bargaining groups, attending meetings as directed by the Department and requested by the City, consulting with state and federal agencies as necessary, and applying for grants as provided by Act 47.  (*Id.* at 139a.)  In Article XIII of the Contract, EConsult promised not to enter into any subcontract for the activities identified in the Contract without the prior written approval of the Department.  (*Id.* at 130a.)  Appended to the Contract was a budget, which allotted payment to Fairmount Capital Advisors (Fairmount), as a financial consultant, and McNees, Wallace and Nurick (McNees), as legal counsel, for subcontract work they were to perform related to EConsult's activities as Act 47 Coordinator.  (*Id.* at 144a, 154a.)  The budget stated that Fairmount and McNees would bill hourly through EConsult.  (*Id.*)

### A.     The Request under the RTKL and the Department's Responses

On November 28, 2017, the Department received, via email, a request from Requester, a paralegal with the law firm of Conrad O'Brien, P.C., under the RTKL. The request consisted of 20 subparts and requested, *inter alia*, copies of specific records, including documents exchanged between EConsult, Fairmount, and McNees, relating to the potential monetization or privatization of the Chester Water Authority (CWA).[3]  (*Id.* at 8a-10a.)

---

[3] Specifically, the request was as follows:
**(Footnote continued on next page…)**

3

1.    Copies of all documents, emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages concerning the potential privatization or monetization of the assets of the [CWA] from August 2017 to the present.

2.    Copies of all documents, emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages concerning a bid for Aqua America to lease, purchase, operate, or otherwise privatize or monetize the assets of [CWA] from August 2017 to the present.

3.    Copies of all communications, including but not limited to emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages, exchanged with Aqua America concerning the [CWA] from August 2017 to the present.

4.    Copies of all communications, including but not limited to emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages, exchanged with American Water concerning the [CWA] from August 2017 to the present.

5.    Copies of all communications, including but not limited to emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages, exchanged with an investor owned utility concerning the [CWA] from August 2017 to the present.

6.    Copies of all records of phone calls with representatives of Aqua America, American Water, or other investor owned utilities from August 2017 to the present.

7.    Copies of all documents, emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages concerning a valuation of [CWA]'s assets from August 2017 to the present.

8.    Copies of all documents, emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages concerning proposals and considerations for the assets of [CWA] from August 2017 to the present.

9.    Copies of all documents, emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages from the City['s] . . . Act 47 Consultants/Coordinators, including but not limited to written materials exchanged between the City . . . and E[C]onsult . . . and/or Fairmount . . . concerning the privatization or monetization of [CWA] from August 2017 to the present.

10. Copies of all documents, emails, text messages, letters, memoranda, proposals, other written materials, and voicemail messages from the City['s] . . . Act 47 Consultants/Coordinators, including but not limited to written

**(Footnote continued on next page…)**

Following statutorily invoked and agreed-upon extensions for responding, the Department issued its response, denying the request in part, on the ground that certain requested records, as pertinent to the issues raised on appeal, constituted internal, predecisional deliberations, consisting of "internal staff and contractor

---

(continued…)

materials exchanged between the Commonwealth of Pennsylvania or the . . . Department . . . and E[C]onsult . . . and/or Fairmount . . . concerning the privatization or monetization of [CWA] from August 2017 to the present.

11. Copies of all records, including but not limited to invoices, concerning payments by the City . . ., the Commonwealth of Pennsylvania or the . . . Department . . . to the City['s] . . . Act 47 Consultants/Coordinators from August 2017 to the present.

12. Copies of all itemized legal bills from McNees . . . for services related to the City . . . from August 2017 to the present.

13. Copies of all itemized legal bills from David Unkovic, Esquire for services related to the City . . . from August 2017 to the present.

14. Copies of all itemized bills from Fairmount . . . for services related to the City . . . from August 2017 to the present.

15. Copies of all itemized bills from Daniel Connelly for services related to the City . . . from August 2017 to the present.

16. Copies of all itemized bills from E[C]onsult . . . for services related to the City . . . from August 2017 to the present.

17. Copies of all itemized bills from Stephen Mullin for services related to the City . . . from August 2017 to the present.

18. Copies of all contracts between the City . . . and any Act 47 Consultants/Coordinators, including but not limited to contracts with . . . McNees . . . , E[C]onsult . . . and/or Fairmount . . . from August 2017 to the present.

19. Copies of all contracts between the Commonwealth of Pennsylvania or the . . . Department . . . and any Act 47 Consultants/Coordinators for services related to the City . . . , including but not limited to contracts with McNees . . . , E[C]onsult . . . and/or Fairmount . . . , from August 2017 to the present.

20. Copies of all itemized bills paid by the City, the Commonwealth of Pennsylvania, and/or the . . .Department . . . for telephone calls made by the Mayor of [the] City and Chester City Council from August 2017 to the present.

(R.R. at 8a-10a.)

recommendations, comments to documents, draft proposals, and discussions that played a role in the Department's Act 47 decision making process." (*Id.* at 17a-18a.) Specifically, the Department withheld portions of a report dated September 22, 2017, from EConsult to the Department (EConsult Report), (*id.* at 70a, 299a-305a), and an attachment to an email dated November 22, 2017 (Email Attachment),[4] from a McNees attorney to the Department's staff and staff of EConsult and Fairmount, (*id.* at 71a, 283a).

### B. Requester's Appeal to OOR

Requester filed an appeal under the RTKL with OOR, arguing that the Department had not provided sufficient information to meet its burden of showing that the withheld records were exempt from disclosure. (*Id.* at 4a-5a.)

In response, the Department submitted an agency affirmation from Jennifer Fogarty (Fogarty Affirmation), the Department's Open Records Officer, who affirmed as follows. McNees was hired by EConsult to provide legal services under the Contract. (*Id.* at 69a.) The Department and EConsult, Fogarty stated, were the clients of McNees. The Department paid McNees' legal bills for the work it performed under McNees' subcontract with EConsult. (*Id.*) As to the EConsult Report, Fogarty explained redactions were made to it pursuant to the internal, predecisional deliberation exception for the following reasons:

> [The Department] redacted a section of the [EConsult] Report entitled "Use of Borrowing Proceeds" as internal predecisional deliberations of [the Department] . . . . This redacted section of the [EConsult] Report includes Act 47 Coordinator Team recommendations for how

---

[4] Collectively, we refer to the EConsult Report and Email Attachment as the withheld records.

6

the City should prioritize its payments to vendors and other obligations that were based in part on input from McNees attorneys.

[The Department] redacted a small portion of a section of the [EConsult] Report entitled "Pension Minimum Municipal Obligation Payments". The redaction was made on the basis that it contains internal predecisional deliberations between the Act 47 Coordinator and [the Department] containing recommendations pertaining to the proposed City budget . . . .

[The Department] redacted portions of a section of the [EConsult] Report entitled "Remaining Short and Long Term Financial Challenges" in which the Act 47 Coordinator sets out a proposed strategy for the City to reach a balanced budget, because this text reflects internal predecisional deliberations between [the Department] and its contractors . . . .

[The Department] redacted portions of the section of the [EConsult] Report entitled "Financial Developments Concerning Key Revenue Sources". The redacted text consists of impressions and analysis of the Act 47 Coordinator and McNees with respect to financial outlook, legal conclusions of McNees attorneys, and contains recommendations for future action as to maximize the City's revenue sources. Accordingly, the text contains internal predecisional deliberations of [the Department] with its contractors . . . .

[The Department] redacted a two-sentence portion of the part of the [EConsult] Report entitled "Financial Audits", in which the Act 47 Coordinator identifies a problem and proposes a solution. This information is exempt as internal predecisional deliberations between [the Department] and its contractor . . . .

[The Department] redacted the first two sentences from the section entitled "Grants Coordinator". This redacted text includes Act 47 Coordinator recommendations for future action to improve the City's grants process. The redacted text reflects internal agency deliberations of [the Department] with its contractors.

[The Department] redacted portions of the section entitled "Financial Outlook and 2018 Budget". These sections contain Act 47 Coordinator impressions, conclusions and recommendations to be given to the City toward reaching a balanced budget. The redactions

7

were made on the basis that they reflect internal agency deliberations between [the Department] and the Act 47 Team, its contractors.

(*Id.* at 70a-71a.)  Fogarty stated that the EConsult Report "was created solely for" the Department, and the Department "does not share the [EConsult] Report . . . with outside parties." (*Id.* at 70a.)  As for the Email Attachment, Fogarty explained that the Department withheld it because it "is a proposed response letter addressed to [the CWA's] counsel in draft form." (*Id.* at 71a-72a.)  Fogarty noted that the Email Attachment "was submitted to [the Department's] staff for review and comment for an action to be taken" and, therefore, was not provided pursuant to the internal, predecisional deliberation exception.  (*Id.* at 72a.)

In a memorandum of law, Requester argued that the internal, predecisional deliberation exception did not apply to the withheld records because such records had to be internal to one agency or among other governmental agencies.  EConsult, McNees, and Fairmount could not be considered agencies for the purpose of this exception.  Information shared externally had to be disclosed, Requester asserted.

The OOR Appeals Officer (Appeals Officer) requested supplemental submissions addressing, *inter alia*, whether records created or received by third-party subcontractors were internal to the agency.  (*Id*. at 323a-24a.)

In the Department's supplemental submission, the Department argued that the internal, predecisional deliberation exception applied because the withheld records involved the Department's communications with both EConsult and McNees and were generated at the Department's express direction for the purpose of discussing, studying, and weighing various approaches to the challenges facing the City.  (*Id*. at 333a.)

In further support, the Department offered affidavits from Adam L. Santucci, an attorney and member with McNees, and Stephen Mullin, the President and

Principal of EConsult, which were almost identical. Santucci and Mullin stated that when the RFP was issued, EConsult and Fairmount, "the then-current Act 47 Coordinator team," "invited McNees to contribute to a joint response to the RFP, whereby McNees would provide the necessary legal experience." (*Id.* at 336a, 340a.) With McNees part of the Act 47 Coordinator team, "it was believed that a full-service Recovery Coordinator would be created to provide all aspects of municipal finance, public policy, legal counsel and economic development consultation throughout the implementation of the recovery plan." (*Id.* at 336a, 340a.) McNees' role was to advise the Department on the Recovery Plan's compliance with Act 47, providing "guidance, legal advice, legal strategy and recommendations to EConsult and Fairmount," who are the Department's agents, so that the Department could help the City implement the Recovery Plan and exit its financially distressed municipality status. (*Id.*) In particular, McNees was expected first to consult with EConsult and Fairmount in order to identify and recommend legal options for reducing the past and future liability of the City. In addition, McNees was to evaluate recommendations from other members of the Act 47 team to ensure they complied with the law. In other words, legal and financial matters were intertwined. In order to make recommendations and analyze the recommendations of others, McNees had to "obtain and consider feedback from EConsult, Fairmount," and the Department. (*Id.*)

In a supplemental memorandum of law from Requester, he argued that records shared by an agency with its contractors, subcontractors, third parties, or consultants were not internal to the agency. Requester argued that EConsult and Fairmount were not agents of the Department because the Department and

9

EConsult have divergent interests and asserted that the Contract expressly disclaimed any agency relationship between the Department and EConsult.

### C. OOR's Final Determination

After conducting an in camera review of certain records, OOR granted Requester's appeal in part and denied it in part, concluding, as relevant here, that some of the withheld records were exempt from disclosure because they reflected internal, predecisional deliberations. OOR agreed with Requester that EConsult, McNees, and Fairmount were not agencies within the meaning of the RTKL, but determined the withheld records were still internal to the Department because, as the Fogarty Affirmation showed, "McNees and Fairmount Capital share a contractual relationship with EConsult which, in turn, shares a contractual relationship with the Department." (Final Determination at 10.) Again citing to the Fogarty Affirmation, OOR stated that "the Department contracted with EConsult to serve as the Act 47 Coordinator for the City and EConsult subcontracted with McNees and Fairmount Capital to provide professional legal and financial services relating to and in support of the City's Recovery Plan and the contract between the Department and EConsult." (*Id.*) Given the foregoing, OOR held, the withheld records were internal to the Department. (*Id.* at 10-11 (citing *Folletti v. Edinboro Univ. of Pa.* (OOR Docket No. AP 2017-2292, filed April 26, 2018); *Cedar Realty Tr. v. Lower Macungie Twp.* (OOR Docket No. AP 2013-1799, filed November 4, 2013)).)

Requester now petitions this Court for review.[5]

---

[5] Our standard of review of a final determination of OOR under the RTKL is de novo, while our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013). "[W]e may substitute our own findings of facts for that of the agency or rely upon the record created below." *Pa. State Police v. Muller*, 124 A.3d 761, 763 n.2 (Pa. Cmwlth. 2015).

## II.    Appeal to this Court

### A.    Arguments of the Parties

Requester argues that OOR erred in concluding that the Department properly invoked the internal, predecisional deliberation exception because records shared with outside contractors cannot be considered internal to the agency. Requester notes that the RTKL "is silent as to contractors of a non-agency in a manner similar to the relationship between McNees and Fairmount Capital to E[C]onsult," but that because exceptions under the RTKL should be interpreted narrowly, internal records should be limited to records shared within the agency or among several agencies. (Requester's Brief at 21.) Further, OOR's own case law that considers records shared where there is a contractual relationship between the agency and a contractor is inapposite as McNees and Fairmount were EConsult's contractors, not the Department's. While the internal, predecisional deliberation exception has been extended to agents of the agency, "OOR did not and could not conclude that E[C]onsult, McNees and/or Fairmount Capital were agents of the Department." (*Id*. at 22-23.) Rather, EConsult is an independent contractor of the Department, while McNees and Fairmount have some "unknown and unclear" relationship with EConsult. (*Id.* at 23.) As such, Requester asserts that OOR erred in insulating the withheld records from disclosure under the internal, predecisional deliberation exception.

The Department argues that records are internal if the agency has a contractual relationship with the party with whom communications are shared. The Department asserts that a contractual relationship exists between it, EConsult, Fairmount, and McNees, as they are all bound by the Contract, which obliges them to assist the Department with the financial and legal aspects of the Recovery Plan. It would serve no compelling public interest and undermine the purpose of the internal, predecisional deliberation exception to require disclosure of records

11

shared between an agency, a contractor, and an essential subcontractor. Therefore, the Department argues OOR correctly concluded that the Department properly invoked the internal, predecisional deliberation exception.

## B.     The Internal, Predecisional Deliberation Exception

Before us is a question of statutory interpretation. Thus, we first set forth the well-settled principles for interpreting a statute. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a). The best indicator of legislative intent is the plain language of the statute. *Clearwater Constr., Inc. v. Northampton Cty. Gen. Purpose Auth.*, 166 A.3d 513, 517 (Pa. Cmwlth. 2017). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). However, "[w]hen the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters . . . [t]he occasion and necessity for the statute[,] . . . [t]he mischief to be remedied[,] . . . [t]he object to be attained[,] [t]he consequences of a particular interpretation[,] . . . and administrative interpretations of such statute." 1 Pa. C.S. § 1921(c).

Therefore, beginning, as we must, with the text of Section 708(b)(10)(i) of the RTKL, it exempts from disclosure:

> [a] record that reflects . . . [t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

12

65 P.S. § 67.708(b)(10)(i). As the text of the statute sets forth, in order to claim the internal, predecisional deliberation exception, the agency, which bears the burden of proof by a preponderance of the evidence, must show: "(1) the information is internal to the agency; (2) the information is deliberative in character; and, (3) the information is prior to a related decision, and thus 'predecisional.'" *McGowan*, 103 A.3d at 381.

Here, the parties dispute only the first element of the internal, predecisional deliberation exception, whether the withheld records were "internal to the" Department since the Email Attachment was sent by a McNees attorney to the Department's staff and staff of EConsult and Fairmount, while EConsult shared its Report with the Department. In the past, we have held that "[r]ecords satisfy the 'internal' element when they are maintained internal to one agency or among governmental agencies." *Smith ex rel. Smith Butz, LLC v. Pa. Dep't of Envtl. Prot.*, 161 A.3d 1049, 1067 (Pa. Cmwlth. 2017) (citing *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1216 (Pa. Cmwlth. 2011)). We have never addressed the question of whether information shared between an agency and an entity with whom the agency contracts is still "internal to the agency." *McGowan*, 103 A.3d at 381. Further, the plain language of Section 708(b)(10)(i) does not explicitly address this question. Therefore, we must ascertain the intent of the General Assembly by looking to "other matters," as set forth in Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(c).

"The RTKL is remedial in nature and is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Office of the Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015) (internal

13

quotation marks and citation omitted). Therefore, "[c]onsistent with the RTKL's goal of promoting government transparency and its remedial nature," we must construe exceptions to disclosure of public records narrowly. *Id.* However, as it pertains particularly to the internal, predecisional deliberation exception, this exception "'benefits the public and not the officials who assert the privilege'" by recognizing "'that if governmental agencies were forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'" *McGowan*, 103 A.3d at 381 (quoting *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 33 (Pa. Cmwlth. 2001)).

With these purposes in mind, we turn to the facts at hand. As the Appeals Officer determined, a contractual relationship exists among the Department, EConsult, McNees, and Fairmount. The evidence the Department presented showed that in September 2015, the Department issued a RFP seeking, consistent with Section 221 of Act 47, 53 P.S. § 11701.221, to continue the services EConsult had been providing as the Act 47 Coordinator, that is, to continue the implementation of EConsult's Recovery Plan for the City. (R.R. at 139a-41a.) EConsult filed a response that specifically noted that it would be subcontracting legal and financial work associated with the Recovery Plan to, respectively, McNees and Fairmount, and that McNees and Fairmount would be paid by the Department through EConsult. (*Id.* at 144a.) Indeed, according to EConsult's budget, more than half of it was allocated toward paying McNees and Fairmount. (*Id.* at 154a.) This response was incorporated into the Contract. Further, Santucci and Mullin confirmed in their affidavits that McNees and Fairmount were part of the Act 47 team with EConsult, and that McNees and Fairmount performed, respectively, legal services and financial services for EConsult who, again, was

14

hired to implement the Recovery Plan. (*Id.* at 334a-41a.) Thus, the record clearly establishes a contractual relationship between the Department and EConsult, McNees, and Fairmount for the purposes of implementing, pursuant to Act 47, the Recovery Plan.

Given this contractual relationship and the purpose for which it was formed, we conclude that it serves, rather than hinders, the RTKL to interpret "internal to the agency" as including the predecisional, deliberative information that was exchanged between the Department and EConsult, McNees, and Fairmount. In reaching this conclusion, we are guided by the fact that state "agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unravelling . . . knotty complexities." *Nat'l Inst. of Military Justice v. U.S. Dep't of Justice*, 512 F.3d 677, 683 (D.C. Cir. 2008) (citation omitted). The General Assembly contemplated that the Department, in order to assist municipalities facing financial distress, would require the assistance of a consultant, such as EConsult, and, thus, Act 47 authorizes the Department to appoint such a consultant, in the form of an Act 47 coordinator, to prepare a recovery plan. Section 102(b)(1)(i) of Act 47, 53 P.S. § 11701.102(b)(1)(i) (declaring as the intent of the General Assembly to "[e]nact procedures to provide municipalities showing early indicators of financial distress with training and technical and financial assistance"); 53 P.S. § 11701.221(a) ("the secretary shall appoint a coordinator who shall prepare a plan addressing the municipality's financial problems"). EConsult, in turn, with the Department's express approval, hired McNees and Fairmount to assist with the legal and financial aspects of the Recovery Plan. It is evident from the plain language of Act 47 that the implementation of a recovery plan requires financial and legal expertise

15

since consideration must be given to, *inter alia*, possible changes in collective bargaining agreements, changes to municipal ordinances or rules, changes in accounting, recommendations for special audits, and whether privatization of municipal services is appropriate. Section 241 of Act 47, 53 P.S. § 11701.241. In the course of considering, for example, changes in collective bargaining agreements or, as here, the privatization of municipal services, which can be controversial, the administrative decision making process is facilitated when agency officials and expert outside contractors can have a "frank exchange of ideas and opinions." *McGowan*, 103 A.3d at 381. In order to promote the frank exchange of ideas and opinions under those circumstances, we interpret "internal to the agency" as including the circumstances presented here.

Our interpretation is consistent with OOR's interpretation which, while not binding, we may consult in discerning the intent of the General Assembly. 1 Pa. C.S. § 1921(c); *see Pennsylvanians for Union Reform v. Pa. Office of Admin.,* 129 A.3d 1246, 1256 n.16 (Pa. Cmwlth. 2015) (noting that we may rely on OOR's final determinations for their persuasive value). For example, in OOR's decision in *Folletti*, the requester sought records regarding a student housing project at Edinboro University (the University) that had "[s]everal structural and maintenance issues." *Id.*, op. at 2, 8. As attested to by a former Vice President for Finance and Administration, the University had engaged, among others, "architects, contractors, and/or consultants" to discuss, analyze, and deliberate those issues, which ultimately resulted in the University seeking bids from construction vendors to perform fire rating improvements. *Id.* at 8-9. OOR concluded that because these were communications between the University, which is a Commonwealth agency, and a contractor to perform services on behalf of the

16

University, the records were internal to the agency and, therefore, satisfied the first element of the internal, predecisional deliberation exception. *Id.* at 9-10; *see also Cedar Tr. Realty*, op. at 6 (noting that the exception is considered internal if "the records exchanged were made pursuant to contracts with third parties").

Our interpretation is also guided by the Freedom of Information Act (FOIA)[6] and the case law interpreting it, which we may consult because FOIA is the federal counterpart to the RTKL. *McGowan*, 103 A.3d at 386. In *National Institute of Military Justice*, for example, a FOIA request was made for communications regarding the President of the United States' November 13, 2001 Military Order establishing military commissions to try terrorists. 512 F.3d at 678-79. In the course of promulgating regulations related to the military commissions, the Department of Defense (DOD) had solicited and received comments from non-governmental lawyers "who were former high ranking government officials or academics or both." *Id.* at 679. DOD explained that it sought comments from these non-governmental lawyers because of "their previous experience in the government and/or their expertise made them uniquely qualified to provide advice." *Id.* DOD withheld certain documents that contained those comments, claiming they were exempt under FOIA Exemption 5, which exempts "inter-agency or intra-agency" information that is part of the "deliberative process." 5 U.S.C. § 552(b)(5). After engaging in an extensive review of its case law, the United States Court of Appeals for the D.C. Circuit concluded that DOD properly exempted these comments from disclosure. *Nat'l Inst. of Military Justice*, 512 F.3d at 687. The D.C. Circuit explained that these documents were considered "intra-agency" because the comments were in response to DOD's request for

---

[6] 5 U.S.C. § 552.

17

advice. *Id.* at 681. The D.C. Circuit noted, as we have quoted above, that "federal agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unraveling their knotty complexities." *Id.* at 683 (citation omitted). The D.C. Circuit emphasized that two factors weighed heavily in support of exempting deliberative information exchanged between an agency and a consultant the agency engaged. First, in "eliciting candid and honest advice from outside consultants," the D.C. Circuit stated, it was "crucial" that the agency and the consultant could expect that their communications would "remain confidential." *Id.* at 685. Second, where the deliberative exemption was extended to a consultant, there was "some indicia of a consultant relationship between the outsider and the agency," such as, the D.C. Circuit stated, the agency affirmatively soliciting the advice of a consultant in aid of the agency's business. *Id.* at 686.

Although, here, we are not faced with as broad an application of the RTKL as the D.C. Circuit faced with FOIA in *National Institute of Military Justice* – there was evidently no contract between DOD and the non-governmental lawyers, DOD merely sought comments from them – we are persuaded by the D.C. Circuit's reasoning. As the D.C. Circuit emphasized in *National Institute of Military Justice*, much as we have emphasized in our case law, *McGowan*, 103 A.3d at 386, when an agency engages a consultant to assist in the agency's business, in order to promote the frank exchange of ideas and opinions between the consultant and the agency so that the agency can make fully informed decisions, their deliberative predecisional communications must be considered internal to the agency.

Given the foregoing, we conclude that OOR correctly determined that the Department properly invoked the internal, predecisional deliberation exception to

18

the withheld records. The evidence established that there was a contract between the Department, EConsult, McNees, and Fairmount. The Department engaged EConsult, McNees, and Fairmount, pursuant to Act 47, to assist the Department in implementing the Recovery Plan to relieve the distressed status of the City. The withheld records contain communications between Department, EConsult, McNees, and Fairmount that were internal to the Department, and Requester does not otherwise challenge those communications as either not deliberative or predecisional. As such, the Department satisfied its burden of proof on the internal, predecisional deliberation exception to the withheld records, and, thus, we affirm OOR's Final Determination concluding that the Department properly invoked the internal, predecisional deliberation exception to the withheld records.

## III.    Conclusion

For the foregoing reasons, we affirm the Final Determination of OOR concluding that the Department properly invoked the internal, predecisional deliberation exception to the withheld records.

 

**RENÉE COHN JUBELIRER,** Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nolan Finnerty,                                    :
                        Petitioner                  :
                                                    :
                                                    :
              v.                                    :        No. 801 C.D. 2018
                                                    :
Pennsylvania Department of                          :
Community and Economic                              :
Development,                                        :
                        Respondent                  :


# **O R D E R**


**NOW**, April 25, 2019, the Final Determination of the Office of Open Records issued May 14, 2018, that the Pennsylvania Department of Community and Economic Development properly invoked the internal, predecisional deliberation exception is **AFFIRMED**. The remainder of Nolan Finnerty's petition for review is **DISMISSED AS MOOT.**


_____
**RENÉE COHN JUBELIRER,** Judge