**[J-75A&B-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| CHESTER WATER AUTHORITY, | : | No. 44 EAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | 4/25/19 at No. 801 CD 2018 affirming |
| v. | : | the order of the Office of Open Records |
| | : | entered on 5/14/18 at No. AP 2018- |
| | : | 0194 |
| PENNSYLVANIA DEPARTMENT OF | : | |
| COMMUNITY AND ECONOMIC | : | |
| DEVELOPMENT, | : | |
| | : | |
| Appellee | : | ARGUED: September 16, 2020 |

| | | |
|---|---|---|
| CHESTER WATER AUTHORITY, | : | No. 45 EAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | 4/25/19 at No. 1090 CD 2018 affirming |
| v. | : | the order of the Office of Open Records |
| | : | entered on 7/11/18 at No. AP 2018- |
| | : | 0247 |
| PENNSYLVANIA DEPARTMENT OF | : | |
| COMMUNITY AND ECONOMIC | : | |
| DEVELOPMENT, | : | |
| | : | |
| Appellee | : | ARGUED: September 16, 2020 |

*OPINION*

**JUSTICE SAYLOR**                                               **DECIDED: April 29, 2021**

In these consolidated appeals arising under the law generally requiring public access to governmental records in Pennsylvania, the lead issue is whether a statutory deliberative-process exception extends to records exchanged between a Commonwealth agency and private consultants.

## I. Background

For almost twenty-five years, the City of Chester has been designated as a distressed municipality under the Financially Distressed Municipalities Act or "Act 47,"[1] which is administered by the appellee, the Department of Community and Economic Development (the "Department" or "DCED"). *See* 53 P.S. §11701.121. Per this enactment, among the Department's other responsibilities, the agency is tasked with appointing coordinators, which may be DCED employees or a private consultants, to formulate plans to address the financial problems of distressed municipalities. *See id.* §11701.221(a), (b).

In 2016, DCED entered into a professional services contract with Econsult Solutions, Inc., a private consulting firm, to act -- in the capacity of an independent contractor -- as the recovery coordinator for the City of Chester. Econsult, in turn, subcontracted with Fairmount Capital Advisors, Inc. and McNees, Wallace & Nurick, LLC to serve as subcontractors, respectively providing professional financial and legal services.[2]

---

[1] Act of July 10, 1987, P.L. 246, No. 47 (as amended 53 Pa.C.S. §§11701.101-11701.712).

[2] In the present briefing, the Department intermittently refers to Econsult and the Fairmount Capital firms as "agents for DCED." *See* Brief for Appellee at 8. The governing professional services contract, however, explicitly defines Econsult's relationship with the Department as being that of an independent contractor and admonishes that "[n]othing contained herein shall be so construed as to create an . . . agency . . . relationship[.]" Contract for Professional Services dated Feb. 23, 2016, No. (continued…)

Significantly, Act 47 recovery plans must address numerous factors potentially useful in mitigating financial distress, including "[a]n analysis of whether . . . privatization of existing municipal services is appropriate and feasible[.]" *Id.* §11701.241(8). Accordingly, Econsult was obliged to assess the potential privatization of local municipal authorities -- including Appellant, Chester Water Authority (the "Authority") -- and estimate the impact on the City's financial health. It was (and is) the Authority's position, however, that a cash infusion from the sale of the water authority is not in the best interests of the public, but rather, would benefit only those with an interest in an appearance of a successful financial turnaround for the City in the short term. The Authority therefore sought to remain abreast of the recovery planning.

In late 2017, the Authority submitted two lengthy requests to DCED under the Right to Know Law,[3] which generally requires Commonwealth agencies to provide access to public records upon request. *See* 65 P.S. §67.301. The Authority requested copies of documents reflecting communications among the Department, Econsult, and the Fairmount Capital and McNees firms related to the potential sale of the water authority.[4] The Department made a partial tender but redacted and/or withheld a substantial quantity of materials.

---

(…continued)
4000019873, art. IV (DCED). Since the Department offers no accounting, on this point, for the contract that it otherwise recognizes as controlling, we reject the suggestion of an agency relationship from the outset.

[3] Act of Feb. 14, 2008, P.L. 6, No. 3 (as amended 65 P.S. §§67.101-67.3104) (the "RTKL" or the "Law").

[4] The requests were tendered by Nolan Finnerty, who was a paralegal with a law firm retained by the Authority. The Authority later requested, and was permitted by this Court, to be substituted as the party-in-interest in the present litigation. For convenience, references to submissions and actions by Mr. Finnerty before DCED, the (continued…)

As relevant here, DCED asserted that disclosure of the withheld materials was not required under Section 708(b)(10)(i)(A) of the Law, which excepts from the general requirement for disclosure of public records:

A record that reflects:

(A) The *internal*, predecisional deliberations *of an agency, its members, employees or officials* or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency . . ..

65 P.S. §67.708(b)(10)(i) (emphasis added).[5] The Department explained that the materials contained "internal staff and contractor recommendations, comments to documents, draft proposals, and discussions that played a role in the Department's Act 47 decision making process."[6] DCED also invoked the privilege applicable to lawyer-

_____

(…continued)
Office of Open Records, and in the Commonwealth Court are attributed to the Authority herein.

[5] Justices Dougherty and Wecht highlight that the statute proceeds to encompass "any research, memos or other documents used in the predecisional deliberations." 65 P.S. §67.708(b)(10)(i). As the Commonwealth Court made clear from the outset of its analysis, however, "[h]ere, the parties dispute only the first element of the internal, deliberation exception, whether the withheld records were "'*internal to the'* Department[.]" *Finnerty v. DCED*, 208 A.3d 178, 186 (Pa. Cmwlth. 2019) (emphasis added). Significantly, the intermediate court quite appropriately limited its review according to the arguments with which it was presented.

Accordingly, we leave it for another day -- when we would have the benefit of a pertinent decision from the intermediate court and relevant advocacy -- whether (or to what degree) the research-memos-documents rubric of Section 708(b)(10)(i)(A) might serve as an exception to the statute's specified focus on matters internal to the agency.

[6] Letter from Christopher C. Houston, Chief Counsel of the Governor's Office of General Counsel to Nolan Finnerty dated January 12, 2018, in RTKL-2017-184 (DCED), at 2; Letter from Christopher C. Houston, Chief Counsel of the Governor's Office of General Counsel to Nolan Finnerty dated January 19, 2018, in RTKL-2017-183 (DCED), at 2.

client communications and the attorney work-product doctrine. *See* 65 P.S. §67.102 (defining, in relevant part, "public record" and "privilege").

The Authority proceeded to lodge an appeal with the Office of Open Records (the "OOR"). *See* 65 P.S. §§67.1101-1102 (prescribing for appeals before the OOR and consideration by an appeals officer). The appeals officer declined to conduct a hearing but undertook *in camera* review of some documents supplied by the Department. Final determinations ensued in which the appeals officer found, in relevant part, that records that DCED had exchanged with Econsult and the Fairmount Capital and McNees firms were internal to the agency, for purposes of the Section 708(b)(10)(i)(A) exception, on account of the contractual relationships among the parties.[7] *Finnerty v. DCED*, No. AP 2018-0194, *slip op.* at 10-11 (OOR May 14, 2018); *Finnerty v. DCED*, No. AP 2018-0247, *slip op.* at 16-17 (OOR July 11, 2018).[8]

In this regard, the appeals officer's reasoning paralleled the position of some federal courts interpreting the federal Freedom of Information Act, 5 U.S.C. §552 ("FOIA"). FOIA protects from disclosure "inter-agency or *intra-agency* memorandums which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5) (emphasis added). As the Supreme Court of the United States has explained, some federal circuit courts of appeals have implemented a

---

[7] The OOR's approach in treating deliberations between agencies and consultants as internal to the agencies apparently traces to *Spatz v. City of Reading*, No. 2010-0655, *slip op.* (OOR Sep. 7, 2010).

[8] The appeals officer also determined that the redacted content was predecisional and deliberative, for purposes of Section 708(b)(10)(i)(A), because it reflected "proposed courses of action and budget-related recommendations concerning the next steps in the City's ongoing financial recovery process." *Finnerty*, No. AP 2018-0194, *slip op.* at 13; *see also Finnerty*, No. AP 2018-0247, *slip op.* at 20. This facet of the determinations is not presently at issue.

"functional approach" to the conception of intra-agency documents and adopted a "consultant corollary," extending the exemption to communications between government agencies and outside consultants hired by them. *Dep't of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-11, 121 S. Ct. 1060, 1065-67 (2001) (quoting 5 U.S.C. §552(b)(5)). These courts generally reason that, in "eliciting candid and honest advice from outside consultants," it is "crucial" that the agency and the consultant can expect that their communications will remain confidential. *Nat'l Inst. of Military Justice v. DOJ*, 512 F.3d 677, 685 (D.C. Cir. 2008); *see also id.* at 683 ("[F]ederal agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unraveling their knotty complexities."). Notably, to date, the Supreme Court of the United States has declined to address the propriety of this consultant corollary in FOIA jurisprudence. *See Klamath*, 532 U.S. at 12, 121 S. Ct. at 1067.

The appeals officer also found that an attorney-client relationship existed between the Department and the McNees firm, and that DCED and Econsult were co-clients of that firm. *See Finnerty*, No. AP 2018-0194, *slip op.* at 19; *see also Finnerty*, No. AP 2018-0247, *slip op.* at 15. For these reasons, he concluded that a portion of the withheld records were protected by the attorney-client privilege and the work-product doctrine. *See id.*

The Authority filed petitions for review in the Commonwealth Court. Just before oral argument convened, the Department made an additional tender, asserting that it was disclosing all documents that had initially been withheld on the basis of the attorney-client and/or work-product privileges. DCED also sought a stipulation that as a result of the production, the issues were moot, but the Authority did not agree.

Upon its review, the Commonwealth Court affirmed. *See Finnerty v. DCED*, 208 A.3d 178 (Pa. Cmwlth. 2019); *see also Finnerty v. DCED*, 1090 C.D. 2018, *slip op.*, 2019 WL 1858392 (Pa. Cmwlth. Apr. 25, 2019). As concerns the statutory deliberative process privilege, the intermediate court's reasoning was consistent with the functionalist approach and the consultant corollary prevailing in some federal courts. While recognizing the legislative policy generally favoring openness and the concomitant requirement for exceptions to be narrowly construed, *see, e.g.*, *PSP v. Grove*, 640 Pa. 1, 25, 161 A.3d 877, 892 (2017), the court nevertheless opined that:

> [A]s it pertains particularly to the internal, predecisional deliberation exception, [the statutory deliberative process] exception "'benefits the public and not the officials who assert the privilege'" by recognizing "'that if governmental agencies were forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'"

*Finnerty*, 208 A.3d at 187 (quoting *McGowan v. DEP*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014) (quoting, in turn, *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 33 (Pa. Cmwlth. 2001))).

As such, the Commonwealth Court reasoned, "it serves, rather than hinders, the RTKL to interpret 'internal to the agency' as including the predecisional, deliberative information that was exchanged between the Department and EConsult, McNees, and Fairmount." *Id.* The intermediate court found this treatment to be particularly apt in the Act 47 setting, in which the Legislature contemplated that DCED might require assistance from consultants to address the many complex problems facing distressed municipalities. *See id.* at 187-88. And, like the federal courts applying the consultant corollary, the court stressed the desirability of a frank exchange of ideas and opinions between the agency and its consultants. *See id.* at 188; *see also id.* at 185 ("[I]t would serve no compelling public interest and undermine the purpose of the internal,

predecisional deliberation exception to require disclosure of records shared between an agency, a contractor, and an essential subcontractor.").[9]

As to the attorney-client and work-product privileges, the Commonwealth Court indicated that, at oral argument, the Authority had agreed that the records withheld as privileged under the attorney-client and work-product privileges had been disclosed. *See id.* at 180. Accordingly, the intermediate court deemed the relevant challenge to be moot. *See id.* Summarily, the court also pronounced that "none of the exceptions to the mootness doctrine apply." *Id.*

## II. The Consultant Corollary

Presently, the Authority argues that, in construing Section 708(b)(10)(i)(A), the Commonwealth Court failed to accord primacy to the plain meaning of the word "internal." *See, e.g.*, Reply Brief for Appellant at 1 ("*Internal* means *internal*. It does not mean external to the agency, pursuant to a contract with the agency, or hired by agency contractors or consultants." (emphasis in original)); Brief for *Amicus* The Pittsburgh Post-Gazette at 3-4 ("Internal cannot mean both inside and outside the organization."). It is the Authority's position that a functionalist approach and the attendant consultant corollary are unsupportable upon a plain-meaning interpretation of the statute.

To the degree that the statute suffers from any ambiguity, the Authority contends that the Commonwealth Court afforded insufficient weight to the RTKL's policy of openness and transparency. *Accord id.* at 3-4 ("[T]he goal of the [Law] is transparency and that goal would be furthered by allowing the public to observe the influence of third parties when agencies make controversial decisions."). The Authority also observes

---

[9] The Commonwealth Court also highlighted that its assessment was consistent with the OOR's interpretation, which it is authorized to consult in discerning the legislative intent. *See Finnerty*, 208 A.3d at 188 (citing, *inter alia*, 1 Pa.C.S. §1921(c)).

that the Commonwealth Court and the Department have failed to recognize the emerging split among federal circuit courts of appeals concerning the appropriateness of the consultant corollary, with a developing line of decisions rejecting the approach as being counter-textual. *See, e.g.*, *Rojas v. FAA*, 927 F.3d 1046, 1058 (9th Cir. 2019), *reh'g en banc granted*, 948 F.3d 952 (9th Cir. 2020); *Lujac v. FBI*, 852 F.3d 541, 548-49 (6th Cir. 2017).

The Department, on the other hand, embraces the Commonwealth Court's treatment, stressing its belief that the consultant corollary promotes efficient governmental administration and is essential to candid communications between agencies and consultants.[10] Indeed, according to the agency, rejection of this corollary would be absurd and unreasonable, particularly because it would "create a burdensome distinction between Act 47 coordinators which are employees of DCED and those coordinators which are consultants or consulting firms." Brief for Appellee at 22-23 (citing 53 P.S. §11701.221(b)).[11]

---

[10] *See* Brief for Appellee at 2 ("Forcing an agency to release records which reflect internal, predecisional deliberations between an agency and a third-party contractor will inevitably have a chilling effect on the free and candid exchange of ideas, and, in this case, the quality of administrative decision-making of those parties assisting a financially distressed municipality facing economic failure will suffer."); *accord* Brief for *Amicus* Pa. State Ass'n of Twp. Supervisors & Cnty. Commr's Ass'n of Pa. at 2 (positing that the OOR and the Commonwealth Court's construction of Section 67.708(b)(10)(i)(A) "permits agencies to collect information necessary to make decisions without the risk that disclosure of that information at the preliminary, predecisional stage will injure the financial or other interests of the agencies and, by extension, their residents and taxpayers").

[11] At times, the Department does not confine its argument to "consultants", but urges that communications and records shared between a Commonwealth agency and a "third-party contractor must remain 'internal to the agency.'" Brief for Appellee at 3. In other passages of its brief, the agency hones in upon Act 47 consultants, thus suggesting that there may be something unique about them -- as contrasted with other (continued…)

There is no dispute that the materials for which the Department has invoked the statutory privilege in issue are public records of an agency as defined in the RTKL and thus subject to public disclosure unless the exception applies. *See generally* 65 P.S. §67.701 ("Unless otherwise provided by law, a public record . . . shall be accessible for inspection and duplication in accordance with this act."). Both parties also apprehend that, consistent with the Law's goal of promoting government transparency and its remedial nature, *see SWB Yankees LLC v. Wintermantel*, 615 Pa. 640, 662, 45 A.3d 1029, 1042 (2012) (explaining that the objective of the RTKL is to empower citizens by affording them access to information concerning the activities of their government), exceptions to the requirement for disclosure of public records are to be narrowly construed. *See Grove*, 640 Pa. at 25, 161 A.3d at 892.

As the Authority stresses, Section 708(b)(10)(i)(A) prohibits disclosure of "*internal*, predecisional deliberations of an agency, its members, employees or officials," as well as deliberations between such individuals and another agency. 65 P.S. §67.708(b)(10)(i)(A) (emphasis added). As a third-party contractor and subcontractors,

_____

(…continued)

consultants -- justifying application of what could be termed an "Act 47 consultant corollary." *See, e.g.*, *id.* at 18-19, 22.

While the consultant corollary is supported by a colorable policy-based rationale, a broader "third-party contractor corollary" is both non-textual and lacks any similarly focused justification. We also believe that, had the General Assembly intended uniquely for communications between agencies and Act 47 recovery coordinators -- but not other consultants -- to be excepted from the general requirement for disclosure under the RTKL, it would have said so.

Accordingly, our remaining analysis is of the viability of a generalized consultant corollary under the Law.

Econsult and the Fairmount Capital and McNees firms plainly are not agencies,[12] members, employees or officials.[13]  *Accord Rojas*, 927 F.3d at 1055 ("A third-party consultant . . . is not an agency" and "'neither the terms of the exemption nor the statutory definitions say anything about communications with outsiders.'" (quoting *Klamath*, 532 U.S. at 9, 121 S. Ct. at 1060)).  *See generally* John C. Brinkerhoff Jr., *FOIA's Common Law*, 36 YALE J. ON REG. 575, 582–84 (2019) (criticizing that consultant corollary on the basis that "[i]t is doubtful that any reasonable reading of 'inter-agency or intra-agency' could encompass third parties").  And "internal," relative to organized structures, commonly means "of, relating to, or occurring on the inside" -- or, in other words, *within* -- the organization.  MERRIAM-WEBSTER DICTIONARY, *https://www.merriam-webster.com/dictionary/internal* (last visited Apr. 27, 2020).

Accordingly, the statutory provision facially does not apply to communications with outside consultants.  *See generally N. Hills News Record v. Town of McCandless*, 555 Pa. 51, 58, 722 A.2d 1037, 1040 (1999) (explaining that, where the provisions of a statute are clear, courts "are forbidden from diverging from the plain meaning under the mere pretext of pursuing the spirit of the enactment.").  And the requirement of narrow construction further solidifies the interpretation that private consultants providing services as independent contractors do not qualify as agencies, members, employees, or officials who may engage in protected internal communications.

---

[12] The RTKL defines "agency" to mean four agencies (Commonwealth, Local, Legislative, and Judicial), all of which have specific definitions centered on governmental status.  *See* 65 P.S. §67.102.  None of the definitions include outsiders.

[13] The words "members, employees or officials" are all undefined in the Law, and thus, we take them according to their common meaning.  *See Grove*, 640 Pa. 1 at 25, 161 A.3d at 892 (citing 1 Pa.C.S. §1903(a)).

To the degree that a further policy assessment would be relevant, we agree with the Authority and its *amicus* that a balancing of the aim to promote the free exchange of deliberative communications against the Law's overarching policy of openness is required.[14] It is the General Assembly's prerogative, however, to conduct the necessary balancing. *See generally Schock v. City of Lebanon*, ___ Pa. ___, ___, 210 A.3d 945, 961 (2019) (recognizing the role of the Legislature as the policy-making branch). And the balance that the Assembly has presently stricken protects only deliberations that are *internal* to an agency and its members, employees or officials, or represent deliberative inter-agency communications. *Accord Lucaj*, 852 F.3d at 549 (recognizing the benefits of a policy that protects frank discussions but emphasizing that, "in the end, Congress chose to limit the exemption's reach [only] to 'inter-agency or intra-agency memorandums or letters'" (quoting 5 U.S.C. §552(b)(5))). *See generally* Brinkerhoff, 36 YALE J. ON REG. at 583 ("The government's 'special need[s]' [relative to consultations with outsiders] have nothing to do with whether a memorandum is 'inter-agency or intra-agency.'" (quoting *Soucie v. David*, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971))).

Significantly, the Legislature knows how to protect agency communications with outsiders; indeed, it has done so in other provisions of the Law. *See, e.g.*, 65 P.S. §708(b)(26) (excepting from disclosure, *inter alia*, pre-acceptance procurement proposals and bidder financial information). And it would have been a straightforward

---

[14] In our judgment, the Department unduly downplays the interest of the citizenry in access to the work product of private consultants retained by the government, in light of the public character of the funds used for their remuneration. It is not an exaggeration to say that some members of the general public would regard consulting contracts of the character of those in issue as being potentially "lucrative" ones. Brief for Appellant at 8. Since "the protection of the public fisc is a matter that is of interest to every citizen," *Brock v. Pierce Cty.*, 476 U.S. 253, 262, 106 S. Ct. 1834, 1840 (1986), "there is an obvious legitimate public interest in how taxpayers' money is being spent, particularly when the amount is large." *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989)).

matter, in Section 708(b)(10)(i)(A), to have listed outside consultants along with "members, employees or officials," but the fact of the matter is that the General Assembly did not do so. In light of the strong, competing policy interests involved, we rest our decision upon the statutory language and leave consideration of any adjustments to the open-records regime to the policy-making branch. *Accord Rojas*, 927 F.3d at 1058 (explaining that, if adherence to the statutory scheme as written proves unworkable, "the proper remedy lies with Congress, not the courts").

We hold that Section 708(b)(10)(i)(A) does not serve to insulate communications exchanged between a Commonwealth agency and a private consultant from the Law's general requirement for openess.

### III. The Attorney-Client and Work-Product Privileges

The Authority next argues that, based on an "unverified and unsolicited eleventh-hour production on the eve of argument, the Commonwealth summarily and without analysis dismissed the issues [that the Authority] raised under the attorney client privilege and work product doctrine." Brief for Appellant at 28. The Commonwealth Court explained, however, that the Authority's counsel agreed, at oral argument, that the records withheld as privileged attorney-client communications and under the work-product doctrine had been produced. *See Finnerty*, 208 A.3d at 180. Presently, the Authority fails to acknowledge the asserted concession in its brief, much less contest the Commonwealth Court's account of it. As such, we have no basis for doubting the intermediate court's position that the matter is settled and, accordingly, the controversy has been mooted.

Invoking the exceptions to the mootness doctrine, the Authority further contends that the attorney-client-privilege and work-product-doctrine issues should be decided under the exception to the mootness doctrine for matters that are capable of repetition

yet evading review. *See DEP v. Cromwell Twp., Huntingdon Cty.*, 613 Pa. 1, 21, 32 A.3d 639, 652 (2011). According to the Authority,

> [i]f the Commonwealth Court's brief decision on this issue is permitted to stand, there would be nothing to preclude the Department from taking this path each and every time; withholding documents under sham claims of privilege and then, when it looks as if its unreasonable stance may be subject to scrutiny, producing something to evade a decision on the merits.

Brief for Appellant at 29; *accord id.* at 30 ("Allowing these issues to be considered moot on this set of facts and with no analysis from the court leaves the Department emboldened and empowered to continue to engage in such dilatory and improper tactics."). Indeed, the Authority claims that it is likely that additional, and purportedly unsupportable, claims of privilege will be lodged in the continuing disputes over public disclosure related to the evaluation of potential privatization of the water authority that was or is underway. *See id.* at 31.

Initially, the Authority does not identify the applicable standard of review pertaining to the Commonwealth Court's determination that none of the exceptions to the mootness doctrine apply. While this Court has indicated that the issue of mootness is a pure question of law subject to *de novo* review, *Commonwealth v. Dixon*, 589 Pa. 28, 35, 907 A.2d 468, 472 (2006), it has also emphasized the discretionary nature of the decision whether to invoke an *exception* to the mootness doctrine and found that an abuse of discretion standard applied to judicial review of a quasi-judicial determination of mootness. *See Ass'n of Pa. State Coll. & Univ. Faculties v. PLRB*, 607 Pa. 461, 470-72, 8 A.3d 300, 305-07 (2010). Facially, the same rationale would seem to apply to judicial assessment of the mootness exceptions on appellate review. Absent developed advocacy on the subject, however, we decline to definitively resolve whether a *de novo* or abuse of discretion standard should apply in the present context.

Responding to the Authority's contentions, as was the case in *Association of Pennsylvania State College & University Faculties*, we are confident that the judicial system can identify and police serial, unjustified evasions by a Commonwealth agency. *See id.* at 473, 8 A.3d at 307. Accordingly, we decline to disturb the Commonwealth Court's ruling on the exception to the mootness doctrine for matters that are capable of repetition yet evading review based on the speculative prediction of serial, unjustified assertions of privilege followed by withdrawals.

Finally, the Authority contends that the issues in this case should be excepted from the mootness doctrine because they are of great and immediate public importance. *See Cromwell Twp., Huntingdon Cty.*, 613 Pa. at 21, 32 A.3d at 652 (referencing the public-importance exception). According to the Authority, every right-to-know request implicates this exception. *See* Brief for Appellant at 31 ("Pennsylvania has held that the duty of government officials to provide nonpublic information pursuant to a Right to Know Act request involves a matter of great public importance" (citing *Lewis v. Monroe Cty.*, 737 A.2d 843, 848 (Pa. Cmwlth. 1999)). The argument continues,

> This is especially true when the very existence of a public municipality authority serving more than 200,000 residents and businesses throughout Chester County, Delaware County and the City of Chester safely and effectively is threatened, and information relative thereto is intentionally hidden at the direction and behest of our Commonwealth.

Brief for Appellant at 31.

We do not read the Commonwealth Court's cryptic invocation of the mootness exceptions in *Lewis* as establishing that the public-importance exception applies in every Right-to-Know-Law controversy. Notably, the *Lewis* court intermixed the two exceptions and pronounced, in a conclusory fashion, that the hybrid applied. *See Lewis*, 737 A.2d at 848 ("[C]ourts will review such matters when the issue raised is one

of important public interest, capable or repetition unless settled and apt to elude review. We see this as such a case." (citations omitted)).

But the general, prudential approach in Pennsylvania remains that courts do not review moot questions, *see, e.g.*, *Cromwell Twp., Huntingdon Cty.*, 613 Pa. at 20, 32 A.3d at 651, and not every claim arising under the Right to Know Law crosses the high threshold for exception. Additionally, in the absence of a continuing course of conduct involving the repeated assertion and withdrawal of privilege claims by the Department -- which may be evaluated in its own right should it arise -- we decline to rest a decision to depart from the general rule upon claims of malfeasance which are undeveloped as of record.[15]

## IV. Order

The order of the Commonwealth Court is reversed as concerns the application of statutory deliberative-process privilege and affirmed as to the mootness of the attorney-client privilege and work product doctrine issues.

Justices Todd, Donohue and Mundy join the opinion.

Justice Dougherty files a concurring opinion.

Justice Wecht files a dissenting opinion in which Chief Justice Baer joins.

---

[15] For example, the Authority hasn't undertaken to demonstrate that any discrete record that was withheld per the attorney-client privilege or work product doctrine and later produced had been unlawfully withheld in the first instance. In this regard, there is no bar to voluntary disclosure to resolve a controversy.