IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kleinbard LLC, : 
          Appellant : 
 : No.   204 C.D. 2022
        v. : 
 : Argued:  March 6, 2023
The Office of the District Attorney : 
of Lancaster County; Heather Adams, : 
in her official capacity as District : 
Attorney of Lancaster County; : 
Lancaster County Board of : 
Commissioners; Joshua Parsons, in : 
his individual capacity and official : 
capacity as Chairman of the Lancaster : 
County Board of Commissioners; : 
Ray D'Agostino, in his individual : 
capacity and official capacity as : 
Vice-Chairman of the Lancaster County : 
Board of Commissioners; Craig : 
Lehman, in his individual capacity and : 
official capacity as Lancaster County : 
Commissioner; Brian Hurter, in his : 
official capacity as Lancaster County : 
Controller; and Christina Hausner, : 
in her individual capacity and official : 
capacity as former Lancaster : 
County Solicitor : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: April 25, 2023

        The law firm of Kleinbard, LLC (Kleinbard) appeals from the February 17, 2022 order of the Court of Common Pleas of Lancaster County (trial court), which sustained in part the preliminary objections (POs) filed by the Office of the Lancaster

County District Attorney (DA's Office); Heather Adams in her official capacity as Lancaster County District Attorney (DA Adams); the Lancaster County Board of Commissioners (Commissioners); Joshua Parsons, Ray D'Agostino, and Craig Lehman in their individual and official capacities as Commissioners; Brian Hurter in his individual and official capacity as Lancaster County Controller (Controller); and Christina Hausner in her individual and official capacity as Lancaster County Solicitor (Solicitor) (collectively, Appellees) and ordered the Commissioners to pay $5,000 to Kleinbard, and dismissed Kleinbard's complaint with prejudice. Upon review, we affirm.

## 1. FACTUAL AND PROCEDURAL BACKGROUND

In early March 2019, the former Lancaster County DA Craig Stedman (Stedman) signed an engagement agreement with the private law firm, Kleinbard, to represent him in his official capacity as Lancaster County DA, "in connection with matters related to him performing his duties, tasks and responsibilities as DA." (Reproduced Record (R.R.) at 41a-43a.) The legal services rendered by Kleinbard related to a lawsuit filed in this Court's original jurisdiction by Stedman in his official capacity as Lancaster County DA against several of the Appellees here (Stedman Lawsuit). (R.R. at 15a, ¶ 22; 45a-117a.) The Stedman Lawsuit, filed against *inter alia*, the Commissioners and Pennsylvania Attorney General, was based on Stedman's allegations that the Commissioners were attempting to inhibit his use of funds exclusively committed to his control. On November 20, 2019, following argument before an *en banc* panel, this Court decided, without reaching the merits of the case, that the Attorney General was not an indispensable party to the Stedman Lawsuit and, accordingly, transferred the matter to the Court of Common Pleas of Lancaster County.

*See Stedman v. Lancaster County Board of Commissioners*, 221 A.3d 747 (Pa. Cmwlth. 2019).

Shortly after Stedman engaged Kleinbard, the Commissioners issued a public letter on March 27, 2019, announcing they would not approve payment of fees incurred by Stedman or the DA's Office resulting from the Stedman Lawsuit, specifically including any fees for Kleinbard's legal services. (R.R. at 22a, ¶ 46; 100a-02a)

From March 2019 through December 2019, Kleinbard performed legal services for Stedman and the DA's Office. In December 2019, with the case still pending, Stedman, who was due to resign to assume a judgeship, submitted a voucher to the Controller for payment of Kleinbard's services in the amount of $74,193.06, which included fees, costs and expenses incurred while litigating the Stedman Lawsuit. Stedman maintained that he had the necessary funds in his budget to pay Kleinbard's legal fees. Specifically, he identified the following three sources of funds under his purview and control, as DA, from which Kleinbard's legal fees should be paid: (1) the DA's annual $5,000 budget for legal fees; (2) the DA's Office's drug/alcohol diversionary program account; and (3) the DA's Office's bad check restitution program account (Program Accounts).

The Commissioners refused to approve payment, and newly sworn-in DA Adams subsequently discontinued the Stedman Lawsuit.

On October 7, 2021, Kleinbard initiated this action in the trial court against Appellees in the nature of a complaint in mandamus, breach of contract, unjust enrichment, and tortious interference demanding payment for legal services rendered in the amount of $74,193.06 incurred in connection with the Stedman Lawsuit. (R.R. at 15a-16a, ¶¶ 21-22, 27.) Kleinbard alleged that it was appropriate to use the funds

that had accumulated in the Program Accounts because they are not taxpayer funds that are drawn from the County Treasury.[1] (R.R. at 27a, ¶ 72-73.)

Appellees filed POs on November 2, 2021, asserting that the engagement agreement between Stedman and Kleinbard was invalid to the extent Stedman agreed to pay Kleinbard an amount that exceeded the $5,000 budget for attorney fees; Kleinbard had an obligation to make sure Stedman had authority to enter into the engagement agreement; Kleinbard was put on early notice that the Commissioners would not authorize its fees; the mandamus action fails as a matter of law because the Commissioners have no mandatory duty to pay for services beyond the funds in the DA's budget; and the unjust enrichment claim fails because the DA's Office received no benefit from Kleinbard's legal services.

In an opinion dated February 21, 2022, the trial court, sitting by designation, sustained Appellees' POs, in part, ordered Appellees to pay Kleinbard $5,000 and dismissed the remainder of the complaint with prejudice. The trial court found that the engagement agreement, although valid, was not enforceable because the DA's Office had only $5,000 to disburse for legal fees in 2019, because that was the amount budgeted for and appropriated by the Commissioners for that year. In the trial court's view, Stedman sought to spend more money than was appropriated to him for legal fees, and he was therefore required to follow Section 1773 of the County Code's requirements for requesting supplemental appropriations from the Commissioners.[2] The trial court found that Stedman lacked any statutory authority to transfer funds from any other line item of his budget to exceed the legal fee appropriation limit of $5,000.

---

[1] According to the complaint, the DA's drug/alcohol diversionary program account and the DA's bad check restitution account are accounts funded by fees paid by participants of those programs. (R.R. at 17a, ¶ 30.)

[2] Act of August 9, 1955, P.L. 323, *as amended*, added by the Act of October 24, 2018, P.L. 931, 16 P.S. § 1773.

4

The trial court observed, were the DA unilaterally able to make supplemental appropriations, which in effect would exceed his legal fee appropriation limit, he would be invading the legislative prerogative of the Commissioners. The trial court further found that it was incumbent upon Kleinbard to know the limitations of the DA's authority, in this case, that Stedman was operating within an assigned budget by the Commissioners. The court reasoned that Kleinbard was informed early on that the Commissioners would not authorize payment of its fees, and proceeded at its own peril by continuing to perform pursuant to the engagement agreement.

## 2. ISSUES

On appeal,[3] Kleinbard raises three issues. First, it contends that the trial court erred when it applied Section 1773 of the County Code to DA-controlled accounts because the monies in those accounts are not appropriated from the County Treasury via the budget process, and thus are not subject to the Commissioners' discretion. Second, it asserts that the trial court misconstrued *Yost v. McKnight*, 865 A.2d 979 (Pa. Cmwlth. 2005), and related case law because, unlike in *Yost*, Stedman sought to draw monies from DA-controlled funds and therefore did not ask the Commissioners for additional monies from the County Treasury. Finally, it contends that the trial court's holding violated separation of powers principles by allowing the Commissioners to interfere with a DA's right to spend monies within his budget.

---

[3] In reviewing a trial court's decision to sustain preliminary objections in the nature of a demurrer, this Court's standard of review is de novo, and the scope of review is plenary. *Ladd v. Real Estate Commission*, 230 A.3d 1096, 1103 (Pa. 2020). A "demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law[,]" and the court "must therefore 'accept as true all well pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts.'" *Id*. (quoting *Yocum v. Pennsylvania Gaming Control Board*, 161 A.3d 228, 234 (Pa. 2017)). Moreover, "a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted." *Id*.

### 3. ANALYSIS

#### A. Section 1773 of the County Code

The county commissioners are the responsible managers and administrators of the fiscal affairs of their respective counties. Section 1701 of the County Code, 16 P.S. § 1701. The budgeting process, including any appropriation to a county officer, is within the sole discretion of the county commissioners pursuant to the County Code. 16 P.S. §§ 1780-85. After the county commissioners decide how to appropriate the money in the budget, "[t]he rate of taxation is then set in order to provide funding for items in the budget." *County of Allegheny v. Allegheny Court Association of Professional Employees*, 539 A.2d 348, 353 (Pa. 1988).

It is well settled that all contracts requiring the government's disbursement of money must be preceded by an appropriation for it. *See Hinkle v. City of Philadelphia*, 63 A. 590 (Pa. 1906) (holding that a contract for cleaning the streets of one part of the city could not legally be made until an appropriation had been made sufficient to pay all contract had been made); *Baxter v. City of Philadelphia*, 123 A.2d 634, 635 (Pa. 1956) (no recovery can be had or liability imposed unless there has been an appropriation to provide funds for payment); *Tate v. Antosh*, 281 A.2d 192, 196 n.3 (Pa. Cmwlth. 1971) (no debt or contract shall be binding upon the government unless authorized by law and prior sufficient appropriation has been made). This precept is codified in Section 1773(b) of the County Code, which provides:

> (b) **No work shall be hired to be done, no materials purchased, no contracts made and no order issued for the payment of any money by the county commissioners which will cause the sums appropriated to be exceeded**.

16 P.S. § 1773(b) (emphasis added).

It is Kleinbard's position that the provision in Section 1773(b) making an appropriation a condition precedent to the right to contract applies only where the obligation is payable out of money appropriated from the County Treasury via the budget process. Kleinbard contends that the engagement agreement did not give rise to an obligation by the County that was payable out of "the sums appropriated" **because there were other available resources available to pay the invoice.** Specifically, it contends that the Commissioners should have paid the invoice from the alternative funds in the Program Accounts (the DA's Office's drug/alcohol diversionary program and bad check restitution program accounts). These funds, according to Kleinbard, are not part of the general fund in the County Treasury. Rather, they are separate accounts maintained by the Controller and over which the DA has sole discretion. The monies in the Program Accounts come from fees paid by program participants, not taxpayers. Therefore, it contends, the engagement agreement was not void under Section 1773(b) due to the absence of an advanced or prior appropriation.

We find several flaws in the argument. First, Kleinbard's argument ignores that Stedman could not, pursuant to Section 1773(b), enter into a contract that exceeded the $5,000 line-item appropriation for legal fees. The fact that there may have been money elsewhere to pay the invoice is beside the point. The point rather is that Stedman **could not enter into the contract** to the extent that it exceeded the amount budgeted for legal fees. A DA's legal fees are payable out of money raised by taxation. Here, Stedman's budget contained an appropriation for $5,000 which was available for him to spend on legal fees. If Stedman wished to exceed the legal fees appropriation limit of $5,000, he should have asked the Commissioners for a supplemental appropriation. He had no right to unilaterally enter into a contract for the payment for legal services that far exceeded his allotted budget for legal expenditures

7

without first obtaining the Commissioners' approval. Because there was no prior appropriation for the $74,193.06 invoice, the Commissioners were well within their rights to deny payment of it. Suffice it to say, Kleinbard is presumed to have knowledge of the County's appropriation requirements.[4]

With respect to Kleinbard's argument that Stedman was free to use the funds in the Program Accounts, over which he had sole discretionary control, to pay Kleinbard's legal fees, we must disagree. Kleinbard has not provided the Court with any citation to or reference to where or by whom the drug/alcohol diversionary program account and the bad check restitution program account were created, nor have we been able to locate any information about the programs. Accordingly, there is nothing for this Court to reference with respect to the limitations, if any, on the use of the funds in such accounts. Therefore, we are unable to confirm that Stedman was, in fact, entitled to use funds for a purpose other than that for which they are earmarked.

Moreover, in *Yost*, this Court held that a DA may only enter into contracts "for those services **for which he has funds in his budget**." *Yost*, 865 A.2d at 986 (emphasis added). Here, the "funds" to which Kleinbard refers were not in Stedman's "budget," but rather were from a drug/alcohol diversionary program account and the bad check restitution program account. In other words, the $69,193.06 from these programs were not "funds in his budget," as Kleinbard contends. The fact that he may ultimately have had an indeterminate amount of resources at his disposal does not

---

[4] "[I]t is a general and fundamental principle of law that persons contracting with a municipal corporation must **at their peril** inquire into the power of the corporation or its officers to make the contract or incur the debt." *Pittsburgh Baseball, Inc. v. Stadium Authority of City of Pittsburgh*, 630 A.2d 505, 509 (Pa. Cmwlth. 1993) (emphasis added); *Lehigh Valley Hospital v. County of Montgomery*, 768 A.2d 1197 (Pa. Cmwlth. 2001). "[A] person who deals with a government official is **bound to know the limitations of that official's authority** and to govern himself accordingly." *Perry v. Tioga County,* 694 A.2d 1176, 1178 (Pa. Cmwlth. 1997) (emphasis added).

8

change the fact that the engagement agreement was invalid because Stedman contracted for legal fees in an amount that exceeded his allotted legal fees budget.[5]

### B. *Yost v. McKnight*

We do not agree that the trial court misconstrued or misapplied the holding in *Yost*. The trial court's application of *Yost* was entirely consistent with the above. In *Yost*, the Board of County Commissioners of Clinton County brought a declaratory judgment action against the Clinton County District Attorney to determine the appropriate procedure for a district attorney to appoint a lawyer to the position of temporary special assistant attorney to assist with a capital murder case. In the process of interpreting Section 1420, 16 P.S. § 1420 (Assistant district attorneys; number; compensation) of the County Code, this Court held that a DA may only enter into contracts "for those services **for which he has funds in his budget**. Otherwise, he must request that the Commissioners appropriate such funds for his use." *Id*. at 986 (citing Section 1784 of the County Code, 16 P.S. § 1784) (emphasis in original). The *Yost* Court explained that:

> Given the scope and breadth of their fiscal responsibilities, it would be illogical to compel the [c]ommissioners to provide non-budgeted funds to cover the expense of legal service contracts entered into by the District Attorney without their approval…. 'Forcing' the payment of such contracts could potentially overdraw the amount the Commissioners have budgeted for the department, or cause the Commissioners to appropriate funds from other line items or other departments

---

[5] The reason for the prior appropriation rule is apparent. If a DA is allowed to contract for services over and above the assigned budget based on his belief that there will be available funds elsewhere to cover the surplus debt, the County could be exposed to legal and budgetary accountability if that belief turns out to be wrong. Indeed, it is not at all clear that Stedman had unfettered authority to reallocate funds from the Program Accounts to pay for Kleinbard's legal fees. In fact, it is the position of the Lancaster DA's Office, itself, one of the Appellees, herein that it lacks such authority.

and levy taxes in an amount sufficient to meet the District Attorney's expenses. . . . In essence, entering an order compelling the commissioners to approve payment of such an expenditure would allow the District Attorney to 'invade the province of the legislative body by applying any excess money from other departmental line items to [his legal service contracts] when those excess monies might be needed for some other purpose in the county.' . . . The County Code is clear that the District Attorney lacks the authority to do so.

*Id.* (citing *Lewis v. Monroe County*, 737 A.2d 843 (Pa. Cmwlth. 1999)). *See also Cadue v. Moore*, 646 A.2d 683 (Pa. Cmwlth. 1994).

Ultimately, this Court in *Yost* found that the Clinton County district attorney had the authority to hire a temporary special assistant district attorney pursuant to Section 1420(b) of the County Code because his budget included funds for this use. 865 A.2d at 987. Thus, the Court held "because it is within his budget, this contract does not invade the province of the [c]ommissioners." *Id.*

Therefore, as the trial court held, under *Yost*, Stedman was limited to contracting for those services for which he has funds in his legal fees budget. For any legal services contract exceeding the budgeted amount for legal fees, Stedman was required to request that the Commissioners appropriate such funds pursuant to Section 1773 of the County Code. *Id.*

### C. Separation of Powers

In its last issue, Kleinbard argues that trial court's holding violated separation of powers principles by allowing the Commissioners to interfere with Stedman's right to spend monies within his budget in order to defend against the Commissioners' illegal encroachment on his constitutional role in County government. We disagree. Kleinbard's position on this issue rests on the merits of the first issue, which we have rejected. Based on our discussion above, the trial court properly held that the engagement agreement was unenforceable beyond the $5,000 budgeted to

10

Stedman. The trial court did not violate separation of powers principles when it held that the Commissioners had the authority to refuse payment of funds exceeding the limitation set forth in Stedman's budget.

The order of the trial court is affirmed.

                                        _____

                                        PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kleinbard LLC, :
            Appellant :
: No. 204 C.D. 2022
       v. :
:
The Office of the District Attorney :
of Lancaster County; Heather Adams, :
in her official capacity as District :
Attorney of Lancaster County; :
Lancaster County Board of :
Commissioners; Joshua Parsons, in :
his individual capacity and official :
capacity as Chairman of the Lancaster :
County Board of Commissioners; :
Ray D'Agostino, in his individual :
capacity and official capacity as :
Vice-Chairman of the Lancaster County :
Board of Commissioners; Craig :
Lehman, in his individual capacity and :
official capacity as Lancaster County :
Commissioner; Brian Hurter, in his :
official capacity as Lancaster County :
Controller; and Christina Hausner, :
in her individual capacity and official :
capacity as former Lancaster :
County Solicitor :

## ***ORDER***

AND NOW, this 25th day of April, 2023, the February 17, 2022 order of the Court of Common Pleas of Lancaster County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge